UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELLENIC PETROLEUM LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>MANSFIELD OIL COMPANY OF<br>GAINESVILLE, INC. and MARGIE<br>LANG,<br><br>          Defendants. | No. 1:19-cv-01071-DAD-SKO<br><br>ORDER GRANTING<br>PLAINTIFF/COUNTER-DEFENDANT AND<br>THIRD-PARTY DEFENDANT'S MOTION<br>TO DISMISS COUNTERCLAIMS AND<br>THIRD-PARTY COMPLAINT<br><br>(Doc. No. 15) |
| MANSFIELD OIL COMPANY OF<br>GAINESVILLE, INC.,<br><br>          Counter-Plaintiff and<br>          Third-Party Plaintiff,<br><br>     v.<br><br>HELLENIC PETROLEUM LLC,<br><br>          Counter-Defendant,<br><br>    and<br><br>PANAGIOTIS KECHAGIAS and DOES<br>1–20,<br><br>          Third-Party Defendants. | |

This matter is before the court on plaintiff/counter-defendant Hellenic Petroleum LLC

("Hellenic") and third-party defendant Panagiotis Kechagias's ("Kechagias") motion to dismiss

defendant/counter-plaintiff/third-party plaintiff Mansfield Oil Company of Gainesville, Inc.'s ("Mansfield") counterclaims and third-party complaint. (Doc. No. 15.) A hearing on the motion was held on January 22, 2020. Attorney Brian Andrew Paino appeared telephonically on behalf of Hellenic and Kechagias, and attorney John Thomas Gilbert appeared telephonically on behalf of Mansfield. The court has considered the parties' briefs and oral arguments and, for the reasons set forth below, will grant the pending motion to dismiss with leave to amend.

## BACKGROUND

On August 2, 2019, Hellenic initiated this action by filing suit against Mansfield and defendant Margie Lang ("Lang"). (Doc. No. 1 (hereinafter, the "Hellenic complaint").) In its complaint Hellenic alleges that Mansfield and Lang, in her capacity as a Mansfield employee, negligently and intentionally interfered with Hellenic's contractual and prospective economic relations and engaged in unlawful, unfair, or fraudulent business practices.[1] (*Id.* at 3–7.) On October 16, 2019, Mansfield filed, in a single filing, its answer to the Hellenic complaint as well as counterclaims and a third-party complaint against Hellenic and Kechagias, respectively. (Doc. No. 11 (hereinafter, the "Mansfield complaint").) The Mansfield complaint, which is the target of the pending motion to dismiss, alleges as follows.

Mansfield "is a supplier of diesel fuels and other petroleum products." (*Id.* at ¶ 7.) Mansfield's "customers take delivery of such products at terminal facilities owned and operated by" Mansfield. (*Id.*) It appears that Hellenic was, at some time relevant to this action, a customer of Mansfield's and that Kechagias is Hellenic's "owner and managing member." (*Id.* at ¶ 10; *see also* Doc. No. 2 at 2.) In or around March 2019, Hellenic "applied for credit" with Mansfield "so that [Hellenic] could purchase fuels and other petroleum products and take delivery at [Mansfield's] terminal facilities." (Doc. No. 11 at ¶ 8.) Based on Hellenic's representation that it could, and its agreement that it would, pay Mansfield for purchases within ten days of each

---

[1] The Hellenic complaint provides almost no factual allegations with regard to the events that gave rise to this action. For example, it does not allege who the various parties in this action are, nor does it allege the business relationship between Hellenic and Mansfield itself. The lack of factual allegations in the Hellenic complaint, however, is not before the court because this order addresses whether Mansfield's challenged counterclaims and third-party complaint state cognizable claims, not whether the Hellenic complaint does.

purchasing invoice, Mansfield agreed to sell fuel to Hellenic. (*Id.*) Hellenic, however, "has taken delivery of fuels from [Mansfield] for which [it] has not paid[,] in the amount of at least $1.5 million." (*Id.* at ¶ 9.) The Mansfield complaint alleges that Hellenic "provided false financial information to [Mansfield] in order obtain credit, and never intended to pay for fuels delivered . . .." (*Id.* at ¶ 8.) Mansfield contends that Hellenic and Kechagias "have engaged in a scheme [] to . . . obtain credit and purchase petroleum products and services on credit from suppliers in and around California without the intention to pay for them." (*Id.* at ¶ 10.) Mansfield also alleges that, after a supplier terminates Hellenic's credit but before that supplier files suit against Hellenic to recover what it is owed, Hellenic "files frivolous lawsuits against [the] suppliers, including the [Hellenic] Complaint filed [in this action]," making "baseless allegations" of interference with or breach of contracts, interference with prospective economic relations, and unfair competition. (*Id.*)

The Mansfield complaint asserts four causes of action: (1) a fraud claim; (2) a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim; (3) a theft claim; and (4) a breach of contract claim. (*Id.* at 10–13.) Each of the causes of action is asserted against both Hellenic and Kechagias, except for the breach of contract claim, which is asserted against Hellenic only. (*Id.*)

On December 6, 2019, Hellenic and Kechagias filed the pending motion to dismiss the Mansfield complaint. (Doc. No. 15.) On January 8, 2020, Mansfield filed its opposition to the motion and, on January 15, 2020, Hellenic and Kechagias filed their reply thereto. (Doc. Nos. 17, 18.)

## LEGAL STANDARDS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**ANALYSIS**

Hellenic and Kechagias move to dismiss the Mansfield complaint in its entirety, arguing that each of the causes of action asserted therein fails to state a cognizable claim. Mansfield opposes the motion, contending that its claims survive a Rule 12(b)(6) analysis. The court addresses the parties' arguments below.

**A.     The Mansfield Complaint Does Not State a Cognizable Fraud Claim**

Hellenic and Kechagias first move to dismiss Mansfield's fraud claim arguing that it fails to satisfy the pleading standards for Federal Rule of Civil Procedure 9(b).

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.*, 19 Cal.

App. 5th 399, 428 (2018) (quoting *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1060 (2012)). When asserting a fraud claim against a corporation, "the plaintiff's burden . . . is even greater . . . . The plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996) (quoting *Tarmann v. State Farm Mutual Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991)).

Moreover, pursuant to the Federal Rules of Civil Procedure, a claim alleging fraud must satisfy heightened pleading requirements. Fed. R. Civ. P. Rule 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.") "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word fraud is not used)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotations omitted). "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Under Rule 9(b), the "circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of its particular misconduct . . . so they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124 (internal quotations omitted) (citing *Bly-Magee*, 236 F.3d at 1019). To satisfy the particularity standard of Rule 9(b), the plaintiff "must set forth *more* than the neutral facts necessary to identify the transaction" at issue. *Id.* (internal quotation marks omitted) (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011)); *see also Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") (internal quotation marks omitted).

Here, even a perfunctory review of the Mansfield complaint reflects that Mansfield's fraud claim as alleged falls short of meeting these standards. Mansfield contends that it has sufficiently pled its fraud claim because it alleged that "Kechagias delivered a false 2018

financial statement on behalf of Hellenic to Mansfield for purposes of obtaining credit." (Doc. No. 17 at 2; *see also* Doc. No. 11 at ¶ 13.)  Mansfield further alleges that Hellenic and Kechagias "made false promises and representations" about Hellenic's "financial ability."  (Doc. No. 11 at 10.)  These allegations are conclusory and do not allege with particularity, as required by Rule 9(b), the circumstances surrounding the alleged fraud.  For example, Mansfield does not allege what the purportedly false promises or representations were, who made them, when they were made, or why they were false.  Indeed, the Mansfield complaint is completely devoid of *any* factual allegations with respect to the purported misrepresentations.  The court is therefore unable to ascertain the who, what, when, where, and how of the misconduct alleged.  Setting aside that fatal defect, the court notes that the Mansfield complaint also does not plausibly allege that Hellenic and/or Kechagias knew that the promises or representations were false, that they intended to defraud Mansfield, or that Mansfield justifiably relied on the purportedly false promises and representations.

Accordingly, the court will grant Hellenic and Kechagias' motion to dismiss the Mansfield complaint's fraud claim with leave to amend.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) ("leave [to amend] shall be freely given when justice so requires," and instructing that this rule "is to be applied with extreme liberality") (citation and internal quotation marks omitted).

**B.      The Mansfield Complaint Does Not State a Cognizable RICO Claim**

Hellenic and Kechagias next move to dismiss Mansfield's RICO claim against them, arguing that Mansfield has failed to sufficiently plead the elements of a RICO claim and lacks standing to bring a RICO claim.  The court addresses each argument in turn.

1.      Pleading Sufficiency

The civil RICO statutes authorize suits and the award of treble damages against individuals or entities who, through a "pattern of racketeering activity," acquire an interest in, or conduct the business of, an enterprise engaged in interstate or foreign commerce.  18 U.S.C. §§ 1962(b), 1962(c), 1964(d).  In particular, § 1962(c), the provision under which Mansfield asserts its RICO claim here, prohibits conducting the affairs of an enterprise engaged in interstate or

foreign commerce through a pattern of racketeering activities. To state a RICO claim under § 1962(c), a plaintiff must allege: (i) conduct (ii) of an enterprise (ii) through a pattern (iv) of racketeering activity, and (v) injury in the plaintiffs' business or property by the conduct constituting the violation. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). "The touchstone of [§ 1962(c)] is that each individual defendant must be shown to have personally participated in a pattern of racketeering activity." *Zazzali v. Ellison*, 973 F. Supp. 2d 1187, 1200 (D. Idaho 2013).

Generally, plaintiffs pursuing RICO claims under § 1962(c) in federal court must satisfy the pleading standards of Federal Civil Procedure Rule 8(a). *See Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 828 (9th Cir. 2003), *overruled on other grounds by Odom v. Microsoft Corp.,* 486 F.3d 541, 551 (9th Cir. 2007) (en banc); *Brewer v. Salyer*, No. CV F 06-01324 AWI DLB, 2007 WL 1454276, at *3 n.2 (E.D. Cal. May 17, 2007) (stating that "the proper standard [for the instant RICO claim] is the notice pleading requirements of Rule 8"). However, where, as here, a RICO claim is based on a predicate offense of fraud, the "circumstances constituting fraud . . . shall be stated with particularity" pursuant to Federal Civil Procedure Rule 9(b). *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). Thus, with respect to fraud-based RICO claims, "the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the representation." *Odom*, 486 F.3d at 553.

Here, Hellenic and Kechagias argue that Mansfield's RICO claim should be dismissed because it has failed to adequately plead a pattern of racketeering activity. The RICO statute defines "racketeering activity" as any act indictable under several provisions of Title 18 of the United States Code, including the predicate acts of wire fraud, § 1343 and mail fraud, § 1341. *See* 18 U.S.C. § 1961(1). To make out a claim for the RICO predicate act of wire or mail fraud, plaintiffs must allege (i) a scheme or artifice devised with (ii) the specific intent to defraud and (iii) use of the United States mail or interstate telephone wires in furtherance thereof. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 782 (9th Cir. 2002).

To plead a pattern of racketeering activity, plaintiffs must allege that defendants committed at least two of the statutorily enumerated predicate acts. 18 U.S.C. § 1961(5); *Turner*

v. *Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (noting that, while at least two acts of racketeering activity are required under RICO to establish a pattern, the pleading of two such acts is not necessarily sufficient to do so). Plaintiffs must also allege: (i) that the racketeering predicates are related, and (ii) that they amount to or pose a threat of continued criminal activity. *Turner*, 362 F.3d at 1229. The relatedness requirement is satisfied if the plaintiffs allege criminal acts with the same or similar purposes, results, participants, victims, or methods of commission, or acts that are otherwise interrelated by distinguishing characteristics and are not isolated events. *Howard v. America Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000). The continuity requirement is satisfied if plaintiffs allege "either a series of related predicates extending over a substantial period of time, i.e., closed-ended continuity, or past conduct that by its nature projects into the future with a threat of repetition, i.e., open-ended continuity." *Id.* at 750.

As with its fraud claim, here Mansfield has failed to plausibly allege a RICO claim against either Hellenic or Kechagias. The Mansfield complaint alleges in conclusory fashion that Hellenic "is an enterprise engaged in and whose activities affect interstate commerce," that Kechagias "conducts the affairs of the enterprise," and that these parties "did conduct and participate in . . . a pattern of racketeering activity . . . for the unlawful purpose of defrauding [Mansfield] and others." (Doc. No. 11 at ¶¶ 16, 17.) The Mansfield complaint alleges that Hellenic and Kechagias "committed multiple related acts of mail and wire fraud from, among other locations, the State of Florida, and to, among other locations, the States of Georgia and California" and that "the[se] acts . . . constitute a pattern of racketeering activity." (*Id.* at ¶¶ 18, 19.) As noted, these allegations are conclusory in nature and do not plausibly allege a RICO violation against either Hellenic or Kechagias.

First, the allegations fail to meet the heightened pleading standard of Rule 9(b). Mansfield simply asserts that Hellenic and Kechagias engaged in mail or wire fraud, but it does not allege with particularity the time, place, and specific content of the purported fraud(s). Second, with respect to alleging a pattern of racketeering activity, Mansfield fails to plausibly allege *any* predicate act, let alone the two minimum required to allege a pattern of racketeering activity. Mansfield argues that it "has alleged more than a single instance of fraudulent activity"

8

because Hellenic and Kechagias have engaged in the same fraudulent conduct "with multiple suppliers and vendors," and it points the court to three other lawsuits filed in this district. (Doc. No. 17 at 4; *see also* Doc. No. 11 at 9–10.) However, the Mansfield complaint simply lists the titles of those cases and does not explain how those cases, or the allegations set forth therein, are related to Mansfield's RICO claim here.

Accordingly, the court concludes that Mansfield has failed to plausibly allege a pattern of racketeering activity.

2.     Standing

To maintain an action in federal court, plaintiffs must allege facts showing that they have Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs bringing claims under the federal RICO statute must also meet additional standing requirements. Under RICO's civil enforcement mechanism, "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefore in any appropriate United States district court." 18 U.S.C. § 1964(c). To have standing under § 1964(c), a plaintiff must allege: (i) "that his alleged harm qualifies as injury to his business or property;" and (ii) "that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008). The necessary injury to business or property requires tangible and concrete financial loss, rather than speculative or uncertain harm. *Guerrero v. Gates*, 357 F.3d 911, 920 (9th Cir. 2004); *Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 71 (9th Cir. 1994). Meanwhile, reliance "on an attenuated chain of conjecture" is insufficient to support proximate causation under § 1964(c). *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1228 (9th Cir. 2008) (citation omitted).

Here, because the court has already found that the Mansfield complaint fails to adequately allege a predicate offense or violation, the court must necessarily find that Mansfield lacks standing to assert a RICO claim. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."); *Sedima*, 473 U.S. at 496 (In a RICO action, "the plaintiff only has standing if, and can only recover to the extent that, he

1    has been injured in his business or property by the conduct constituting the violation").

2        Having found that (1) the Mansfield complaint fails to sufficiently plead a pattern of

3    racketeering activity and (2) Mansfield lacks standing to bring a RICO claim, the court will also

4    grant Hellenic and Kechagias' motion to dismiss Mansfield's RICO claim with leave to amend.

5    **C.**      **The Mansfield Complaint Does Not State a Cognizable Theft Claim**

6        Next, Hellenic and Kechagias move to dismiss plaintiff's theft claim, contending that it,

7    too, fails to state a cognizable claim because "Mansfield does not have a private right of action

8    under [California Penal Code §] 484." (Doc. No. 15 at 10.)

9        The Mansfield complaint alleges that Hellenic and Kechagias took delivery of its fuel with

10    no intention of paying for the fuel and thereby "engaged in theft within the meaning of California

11    Penal Code § 484." (Doc. No. 11 at 12.) "A private right of action under a criminal statute has

12    rarely been implied." *Windham v. Davies*, No. 1:14-cv-01651-LJO, 2015 WL 461628, at *6

13    (E.D. Cal. Feb. 3, 2015). As the court in *Windham* noted:

> Where a private right of action has been implied, there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone. . . . California Penal Code section 484 does not contain any language suggesting that civil enforcement is available to Plaintiff. Nor does the Court finds any authority that a violation of Penal Code section 484 provides a private right of action.

18    *Id.* In opposition to dismissal of this claim, Mansfield merely asserts that "[a]s the victim of theft,

19    [it] has a private right of action." (Doc. No. 17 at 5.) Mansfield, however, provides no analysis

20    or support for its position in this regard, and the court finds no reason to question the analysis of

21    the court in *Windham*.

22        Accordingly, the court will grant Hellenic and Kechagias' motion to dismiss Mansfield's

23    theft claim without leave to amend and with prejudice.[2] *Cervantes v. Countrywide Home Loans,*

24    *Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (explaining that dismissal without leave to amend is

25    proper when amendment would be futile).

26    /////

27

28

---

[2] In any amended complaint, however, Mansfield may assert a claim for conversion, as it indicated that it might do at the January 22, 2020 hearing.

**D.     The Mansfield Complaint Does Not State a Cognizable Breach of Contract Claim**

Finally, Hellenic moves to dismiss Mansfield's breach of contract claim, contending that it, too, fails to state a cognizable claim. A cause of action for breach of contract requires that plaintiff establish the following: (1) the existence of a contract; (2) plaintiff's performance; (3) defendant's breach; (4) resulting damage; and (5) causation. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990), *as modified on denial of reh'g* (Oct. 31, 2001) (citing *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968)).

The Mansfield complaint alleges that Hellenic and Mansfield "entered into a Commercial Credit Application," that Mansfield "performed all obligations required of it pursuant to the agreement," and Hellenic "breached the agreement by failing to pay more than $1.5 Million to [Mansfield]." (Doc. No. 11 at 13.) These allegations do not plausibly allege a breach of contract claim because Mansfield has not alleged that the "Commercial Credit Application" was a contract between it and Hellenic. To the extent that the credit application was a contract, Mansfield has not alleged what specific provisions of that purported contract were breached by Hellenic. Accordingly, Hellenic's motion to dismiss Mansfield's breach of contract claim will also be granted with leave to amend.

## CONCLUSION

For the reasons set forth above, Hellenic and Kechagias's motion to dismiss (Doc. No. 15) is granted with leave to amend. Specifically, Mansfield is granted leave to amend its fraud, RICO, and breach of contract claims, but not its theft[3] claim. Any amended complaint shall be filed within thirty (30) days from the issuance of this order.

IT IS SO ORDERED.

Dated:  __January 28, 2020__          _____
                                        UNITED STATES DISTRICT JUDGE

---

[3] Though, as noted, Mansfield may attempt to assert a conversion claim in any amended complaint it elects to file.

11